1

# SUPREME COURT OF THE UNITED STATES

### FRED J. EYCHANER *v.* CITY OF CHICAGO, ILLINOIS

#### ON PETITION FOR WRIT OF CERTIORARI TO THE APPELLATE COURT OF ILLINOIS, FIRST DISTRICT

No. 20–1214. Decided July 2, 2021

The petition for a writ of certiorari is denied. JUSTICE KAVANAUGH would grant the petition for a writ of certiorari.

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, dissenting from denial of certiorari.

Fred Eychaner owned a tract of land in Chicago's River West neighborhood. Two blocks south stood a factory, owned and operated by the Blommer Chocolate Company. The company wanted Eychaner's land to create a buffer with nearby residential areas, so it offered to purchase the property for $824,980. Eychaner declined.

Eychaner's refusal to sell, however, did not end the matter. Two months later, the city of Chicago notified Eychaner that it was considering whether to take his property. As formalized later, the city planned to invoke its eminent domain power to transfer Eychaner's property to the company.

At face value, this plan conflicted with the settled constitutional rule that a "sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation." *Kelo* v. *New London*, 545 U. S. 469, 477 (2005); see also *Calder* v. *Bull*, 3 Dall. 386, 388 (1798). Governments can take property only "for public use." U. S. Const., Amdts. 5, 14; see also *Kelo*, 545 U. S., at 507 (THOMAS, J., dissenting).

So Chicago identified an ostensible "public use": The city needed to transfer the land to the factory because otherwise

it "may become a blighted area." Ill. Comp. Stat., ch. 65, §5/11–74.4–3(b) (West 2018). Although Eychaner argued that stemming speculative future problems is not a public use, the Appellate Court of Illinois disagreed, holding that the city "may use the power of eminent domain to prevent future blight." 2015 IL App (1st) 131883, ¶69, 26 N. E. 3d 501, 521.

We should grant certiorari for two reasons.

First, this petition provides us the opportunity to correct the mistake the Court made in *Kelo*. There, the Court found the Fifth Amendment's "public use" requirement satisfied when a city transferred land from one private owner to another in the name of economic development. See 545 U. S., at 484. That decision was wrong the day it was decided. And it remains wrong today. "Public use" means something more than any conceivable "public purpose." See *id.*, at 508–511 (THOMAS, J., dissenting). The Constitution's text, the common-law background, and the early practice of eminent domain all indicate "that the Takings Clause authorizes the taking of property only if the public has a right to employ it, not if the public realizes any conceivable benefit from the taking." *Id.*, at 507–514; see also *id.*, at 479 (majority opinion) (acknowledging that "many state courts in the mid-19th century endorsed 'use by the public' as the proper definition of public use"). Taking land from one private party to give to another rarely will be for "public use." But see *id.*, at 513–514 (THOMAS, J., dissenting). The majority in *Kelo* strayed from the Constitution to diminish the right to be free from private takings. See generally *id.*, at 505–523 (same).

Second, even accepting *Kelo* as good law, this petition allows us to clarify the Public Use Clause and its remaining limits. *Kelo* weakened the public-use requirement but did not abolish it. In fact, the *Kelo* majority favorably cited an opinion that had concluded that a taking to prevent "future blight" violated the Public Use Clause. *Id.*, at 487, and n. 17

(citing *99 Cents Only Stores* v. *Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (CD Cal. 2001)). This Court should not stand by as lower courts further dismantle constitutional safeguards.

Failure to step in today not only disserves the Constitution and our precedent, but also leaves in place a legal regime that benefits "those citizens with disproportionate influence and power in the political process, including large corporations and development firms." *Kelo*, 545 U. S., at 505 (O'Connor, J., dissenting). This case is a prime example. Blommer is purportedly the largest cocoa processor and ingredient chocolate supplier in North America and worth $750 million dollars.* And Chicago has decided to use the coercive power of the government to give the company a valuable parcel of not-yet-blighted-land. According to the court below, this forcible transaction is permissible, in part, because "[r]ecognizing the difference between a valid public use and a sham can be challenging." 26 N. E. 3d, at 521. I think that, if our doctrine makes it difficult to discern public use from private favors, we should grant certiorari to provide some much needed clarity.

———

*See Elejalde-Ruiz, Blommer Chocolate To Be Sold to Japanese Company, The Chicago Tribune, Nov. 19, 2018, www.chicagotribune.com/business/ct-biz-blommer-chocolate-sale-20181119-story.html.